**UNITED STATES of America, Appellee,**

v.

**Robert Lee KARNES, Appellant.**

**No. 75–1431.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 10, 1975.
Decided Jan. 30, 1976.

Arthur E. Smith, Roanoke, Va. and (Evans B. Jessee, Roanoke, Va., on brief), for appellant.

Ronald D. Hodges, Asst. U. S. Atty., Roanoke, Va., for appellee.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

After the jury was unable to agree upon a verdict and was discharged at his first trial, Robert Lee Karnes was tried a second time and convicted by a jury of concealing a motor vehicle moving as, or which is part of, or which constitutes interstate or foreign commerce, knowing the vehicle to have been stolen, in violation of 18 U.S.C. § 2313 (1970). Karnes has appealed, asserting as

grounds of reversible error that the district court (a) improperly permitted the transcribed testimony at the first trial of a witness, absent at the second trial, to be read to the jury, (b) improperly called as court witnesses two witnesses whose testimony was essential to the government's case, (c) improperly advised the jury that the government had moved to dismiss one count of the indictment against a co-defendant, and (d) recorded a verdict of conviction for concealment which was inconsistent with a verdict of not guilty for transportation of a stolen motor vehicle in interstate commerce with knowledge that it was stolen.

We conclude that defendant's contention with respect to the court witnesses is of sufficient merit to reverse and grant a new trial. We see no merit in defendant's other contentions nor reason to discuss them except to comment about the use of transcribed testimony from the first trial.

## I.

The somewhat complex facts need not be recited because in oral argument the government conceded that it had no case against Karnes without the testimony of the co-defendant, Fred Cassity, and Cassity's wife. At the bench, the government represented that it would not call them as its witnesses because they previously had made conflicting statements and had withheld information and the government could not therefore vouch for their candor. The district court then called the Cassitys as its own witnesses and in accordance with usual practice permitted both sides to cross-examine them. Fred Cassity was also questioned by the court to permit him to identify a witness who testified about an incident which was a crucial part of the chain of proof. The district court made no statement to the jury in explanation of why these two witnesses were called as its own.

## II.

We agree with the parties that ordinarily the utilization of court witnesses is a matter within the discretion of the trial judge. The leading texts, supported by a plethora of precedents, support the rule. *See* McCormick on Evidence § 8 (1972); 9 Wigmore on Evidence § 2484 (1940). The power to call and to interrogate court witnesses is said to be derived from the judicial system's basic functions of disclosing truth and administering justice.[1] Indeed, the rule is codified in Rule 614 of the new Federal Rules of Evidence, although that rule was not in effect at the time of Karnes' prosecution.

A trial judge is not captive within the case as made by the parties.[2] He has the authority, if not the duty, to call witnesses who possess relevant information affecting the outcome of the issues when the parties decline to call them. But the due process clause requires that a court be impartial.[3] This impartiality is destroyed

---

1. McCormick, *supra*, p. 12:

 Under the Anglo-American adversary trial system, the parties and their counsel have the primary responsibility for finding, selecting, and presenting the evidence. However, our system of party-investigation and party-presentation has some limitations. It is a means to the end of disclosing truth and administering justice; and for reaching this end the judge may exercise various powers.

 Prominent among these powers is his power to call and question witnesses.

 The judge in his discretion may examine any witness to bring out needed facts which have not been elicited by the parties. Also, it is sometimes said that the judge may have a duty to question witnesses, although the exercise of such a duty does not appear to have been enforced by any appellate court decisions (footnotes omitted).

2. See Advisory Committee's Note to subdivision (a), Rule 614, Fed.R.Ev.

3. With respect to the manner of a court's interrogation of witnesses called by it, the Advisory Committee's note to subdivision (b), Rule 614, Fed.R.Ev., states: "The authority of the judge to question witnesses is . . . well established. . . . The authority is, of course, abused when the judge abandons his proper role and assumes that of advocate . . . .." We see no abuse in the form of the district court's questions to Cassity, but we think that when the court called witnesses essential to the government's case whom the government declined to call, there was an analogous abuse.

when the court assumes the role of prosecutor and undertakes to produce evidence, *essential* to overcome the defendant's presumption of innocence, which the government has declined to present. Further, in this case the jury was never told why the witnesses were called as court witnesses and the jury was not instructed that these witnesses were entitled to no greater credibility because they had been called by the court. The jury, thus, may well have afforded them greater credibility than if they had been called as government witnesses. The jury's determination of credibility of witnesses may therefore have been unfairly, albeit unintentionally, influenced and the government's case thereby strengthened.

 We have no doubt that, failing to appreciate that the government could not prove its case without them, the district court's motive in calling the witnesses was to get at the truth and to enable the government to cross-examine and perhaps to impeach them with regard to any testimony unfavorable to the government which was inconsistent with their prior statements. But the same result could have been achieved by an accepted means. The government must, of course, use its witnesses as it finds them. In many cases the prosecution must depend upon the testimony of persons who are co-defendants, co-conspirators, felons, accomplices, etc., and such witnesses often evidence hostility, are impeachable from their past or current activities, or change or slant their testimony from what, based upon prior statements, the government expects them to say. Under such circumstances, a district judge may afford wide latitude to the government to lead, to cross-examine, and partially to impeach such witnesses. Illustrative of current practice is Rule 607, Fed.R.Ev., which states flatly "[t]he credibility of a witness may be attacked by any party, including the party calling him." *See also St. Clair v. United States*, 154 U.S. 134, 150, 14 S.Ct. 1002 (1894); *United States v. Baldivid*, 465 F.2d 1277, 1279 (4 Cir.), cert. denied, 409 U.S. 1047, 93 S.Ct. 519, 34 L.Ed.2d 499 (1972); *United States v. Stubin*, 446 F.2d 457, 463 (3 Cir. 1971); *United States v. Holsey*, 414 F.2d 458, 461 (10 Cir. 1969).

Finally, we are not persuaded to a contrary view by *United States v. Wilson*, 361 F.2d 134 (7 Cir. 1966), and *Smith v. United States*, 331 F.2d 265 (8 Cir. 1964), on which the government relies for affirmance. In both cases, the propriety of the court's calling a witness in a criminal case who gave testimony unfavorable to the defendant was sustained. But in *Wilson*, the witness was not called until the government had closed its case and made a *prima facie* showing of defendant's guilt. Moreover, the testimony was taken out of the presence of the jury and, at the instance of the defendant, it was not revealed to the jury. In *Smith*, although the government had not closed its case before the witness was called, it is clear that the government had proved a case before the witness was called. We disagree with the result in neither case, but we do not think that either is in point here. Our holding is confined to an instance where the government's case would be insufficient as a matter of law without the court witnesses. Neither *Wilson* nor *Smith* arose in that context.

III.

Defendant also claims that there was reversible error when the district court permitted the government to read to the jury the testimony of an expert witness—a qualified document examiner—given at the previous trial. The witness was not present at the second trial, because he was in attendance at still another trial which, it is asserted, the government scheduled in conflict with Karnes' trial. The government claims that if not an actual agreement between counsel to stipulate the expert's testimony, the statements of defendant's counsel arguably gave rise to a reasonable belief on the part of the prosecutor that the witness would not be required to be present, and the demand of Karnes' counsel for production of the witness came so late that the witness could not reasonably be produced.

 We do not decide the question. Defendants must be tried anew, and we think

it unlikely that the government will seek again to use the prior testimony of the expert witness under the same circumstances. We call attention to *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), which recognizes that the confrontation clause does not preclude the use of transcribed testimony of an absent witness if the prosecutorial authorities have made an unsuccessful good-faith effort to obtain his presence at trial. *See also Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 671, 30 L.Ed.2d 661 (1972). We caution that over defendant's objection the testimony of the expert at the first trial may be used in the witness's absence only if it is clearly shown that a good-faith effort to secure his presence was unsuccessfully made.

*Reversed; new trial granted.*

WIDENER, Circuit Judge (concurring):

I

I concur in the result reached by Judge Winter in part II of his opinion and in much of that part of the opinion, but in some respects my reasoning differs.

I decline to base reversal on the already overworked due process clause but rather would base it solely on the too great departure of the trial judge from his historic dispassionate role. After all, the burden of the production of evidence is on the United States, not upon the defendant,[1] and certainly not upon the court. I would classify the error solely as one of federal criminal procedure.[2]

The dissent of Judge Russell accentuates my thoughts on this matter as he recites that it is no more the duty of a trial judge to permit a guilty defendant to escape because of the reluctance of a prosecutor to call a material and available witness than to stand idly by and let an innocent defendant be convicted because of the hesitancy of defendant's counsel to call a witness. If I

thought for even one second that, should a defendant's attorney move the court to call an available witness, explaining that he would not call the witness because the witness had made conflicting statements and he could not vouch for the witness' credibility, and should the motion be denied, this court would hold it reversible error, I would vote to affirm on this point. But I cannot imagine such a result and accordingly vote to reverse, because evenhanded justice is equally or more important than the substance of an applicable rule.

II

Since we do not decide the question as to the absent document examiner mentioned in part III of the opinion, such expressions as are there made are not precedent unless an inference be taken from the statement in the second paragraph of the opinion that defendant's other contentions are without merit. Despite, or on account of, this, as the case may be, I do not want anything said to intimate that I would hold other than the admission of the previous testimony to be reversible error, or that the witness was legally available, or that no effort, good faith or otherwise, was made to secure his attendance. And this is emphasized by the fact that the absent witness was an employee of the United States, and FBI agent, and subpoena power is nationwide in criminal cases. I see nothing in *Barber* or *Mancusi* which would make the evidence admissible here, and if there is a suggestion that a clearly shown good faith effort to obtain an absent witness may be all that is required, I do not think it compatible with the confrontation clause or inferable from those cases as a general rule to be followed. Admittedly overly simplified here, *Barber* set aside a conviction because "absolutely no effort" was made to obtain a witness (other than to ascertain his whereabouts) who was a federal prisoner in another state; while *Mancusi* sustained a conviction when

1. McCormick on Evidence, 2nd Ed., p. 806. See also, e. g. *United States v. Goodling*, 12 Wheat 460, 471, 6 L.Ed. 693 (1827); *Davis v. United States*, 160 U.S. 469, 485, 487, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

2. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Mr. Justice Brandeis concurring).

the witness was a permanent resident of Sweden and admittedly unavailable.

### III

I do not share the apparent apprehension of Judge Russell that we have departed from precedent or that our opinion should in any way inhibit the calling of a witness by the court in the ordinary case. My view of this case is predicated in no small part on the fact that, in this criminal trial, the court called the witness at the instance of the United States having previously been advised that the government would not call him.

### IV

I agree there is no merit in defendant's contentions listed as (c) and (d) in Judge Winter's opinion.

DONALD RUSSELL, Circuit Judge (dissenting):

I concur fully in all the opinion of Judge Winter herein, except for the finding that the trial court committed error in calling as court's witnesses Fred Cassity and his wife.

While the opinion freely concedes that all the authorities affirm unequivocally the right of the trial judge to call as a court witness any available person or persons possessing relevant testimony, especially if the government or the defendant is unwilling or hesitant to call the person as a witness, it would justify departure from that rule in this case for two reasons, neither of which finds support either in the authorities or, I respectfully suggest, in reason. The first reason for departing from the rule is that the trial judge assumed "the role of prosecutor and [undertook] to produce evidence necessary to overcome the defendant's presumption of innocence." Certainly, the opinion cannot mean that by merely calling a person as a court's witness the trial judge assumes the improper "role of prosecutor." If this were true, the trial judge, would be prohibited in all instances from calling a person as a court witness. It is the added qualification that the "evidence of the witnesses" is necessary to the Government's case and makes it impermissible under this reasoning for the court to call the witnesses as court witnesses.

I, however, fail to see why the importance of the witness' testimony is determinative of the right of the trial judge to call him or her as a witness. The very importance of the testimony provides its own justification for the action of the trial judge. There is no real warrant for the trial court to call as a court's witness a person whose testimony lacks special relevancy; the power should not be exercised in order merely to add to the record evidence that at best is peripherally pertinent. But when, as here, there are persons whose testimony, if believed by the jury, could either lead to the defendant's conviction or could go far to absolve the defendant, the trial judge has both a right and a duty, if the Government refused to call the persons, to have them sworn as court witnesses. The trial judge does not abandon his role of required impartiality in the case merely by calling as a court witness one whose testimony is vital but whom the Government or the defendant, for some reason, is reluctant to call. This, I am sure, is a rule that the majority would accept if the witness could supply an essential link in the defense. The same rule should follow when the witness is vital to the Government's case. After all, the trial judge has a responsibility to society and the public. Courts must never forget that the function of the criminal court is as much to shield "the public from criminal behavior" as it is to protect the innocent defendant from undeserved punishment. *Cf., United States Ex Rel. Selikoff v. Com. of Corr.* (2d Cir. 1975) 524 F.2d 650, 654. Unfortunately, this double obligation is too often forgotten and too frequently courts conceive of their function simply as the guardians of a defendant's rights and not as the protector of the public itself from crime. I do not conceive it any more the duty of a trial judge to permit a guilty defendant to escape because of the reluctance of a prosecutor to call a material witness available to him than to stand idly by and let an innocent defendant be con-

segment

victed because of the hesitancy of defendant's counsel to call the witness.

The second reason assigned in the opinion is that the trial judge did not advise the jury "why the witnesses were called as court witnesses" and that they "were entitled to no greater credibility because they had been called by the court." Perhaps in the ordinary case, the rule suggested in the opinion is the proper one. There was no necessity for such advice in this case and the failure to give it, if error, was harmless beyond a reasonable doubt. The prosecutor stated in open court that he was unwilling to call the witnesses because he would not vouch for their credibility. The Government itself thereby cast a heavy shadow over the reliability of their testimony. Anything that the trial judge could have added after that would have been superfluous.

I submit the action of the trial judge was entirely proper. He did no more than his duty.